UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MINOR S. PATTON, JR. AND LANA PATTON | CIVIL ACTION NO. 15-1976 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BOSTON SCIENTIFIC CORPORATION, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Abbott Laboratories' ("Abbott") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. See Record Document 56. Plaintiffs Minor S. Patton, Jr. and Lana Patton (collectively "Plaintiffs") oppose the motion. See Record Document 61-2. Abbott seeks dismissal of all of Plaintiffs' claims. For the reasons set forth below, Abbott's motion is hereby **GRANTED**.

**I. BACKGROUND**

Plaintiffs bring this products liability action seeking recovery for personal damages that they allegedly suffered resulting from the use of Abbott's medical guidewire device (the "Whisper Wire") during Plaintiff Minor S. Patton, Jr.'s ("Patton") heart procedure. On July 2, 2014, Patton underwent a coronary angioplasty procedure performed by Dr. Eric Reeves, M.D. ("Dr. Reeves") at the Willis-Knighton Medical Center. See Record Document 56-1 at 4, ¶ 8, Defendant's Statement of Uncontested Material Facts.[1] During the procedure, part of the Whisper Wire fractured while Dr. Reeves was manipulating the

---

[1] Because Plaintiffs have not controverted most of Abbott's Statement of Uncontested Material Facts (and instead primarily asserts legal conclusions in response to it), much of the background section of the instant Memorandum Ruling is drawn from that document, as required under Local Rule 56.1 and 56.2. See Record Document 61-1; Record Document 56-1.

wire in performing the surgery, which ultimately resulted in a segment of the wire being left in Patton's heart after Dr. Reeves and the assisting doctors decided no further intervention was necessary given their belief that the wire remnant did not pose any risk of harm to Patton. Id. at 6, ¶ 12.[2] Dr. Reeves later stated that the procedure was complicated by Patton's particular anatomy that made the process of manipulating the guidewire more difficult. See id. at 4–5, ¶¶ 8–9.

Plaintiffs seek damages for emotional distress, fear of future injury, medical costs, and loss of enjoyment of life, all of which Plaintiffs allege were caused by the use of Abbott's Whisper Wire. See Record Document 1 at 4, ¶ 17; Record Document 76. Abbott points to the statements of its medical experts, and those of Patton's treating cardiologists, that Patton has not been injured by the Whisper Wire remnant and that it is highly unlikely he would suffer any future injury. See Record Document 56-1 at 6, ¶ 12.

On June 30, 2015, Plaintiffs filed a Complaint (the "Complaint") in this Court. See Record Document 1. Plaintiffs bring a products liability action against Defendant under the Louisiana Products Liability Act ("LPLA") for the damages they allegedly suffered due to Abbott's Whisper Wire fracturing during Patton's heart procedure. See id. at 4, ¶ 17. Plaintiffs also bring a claim for breach of the implied warranty of fitness. See Record Document 61-2 at 23.

---

[2] The relevant statements made by Dr. Reeves and the doctors consulted in this case that Abbott cites in its Statement of Uncontested Material Facts were stated in depositions and based on personal knowledge. See id. at 6, ¶ 12, Defendant's Statement of Uncontested Material Facts (citing Deposition of Dr. Eric Reeves, Exhibit K; Deposition of Dr. James Smith, Exhibit L; Deposition of Dr. William Smith, Exhibit M). Thus, these statements are proper summary judgment evidence and can be considered by this Court.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof [at trial]." See Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

---

[3] The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

The Fifth Circuit has upheld summary judgment in products liability cases, holding that the record evidence was insufficient to create a genuine issue of material fact. See Hebert v. Miles Pharmaceuticals, No. 92-4290, 1994 WL 10184, at *3 (E.D. La. Jan. 13, 1994) ("Indeed in a products liability case if the claimant fails to come forward with sufficient evidence of either a product defect within the meaning of the law or that such 'defect' probably caused the damages, then the trial court should enter judgment as a matter of law in favor of the defendants.") (citing Willett v. Baxter Int'l, Inc., 929 F.2d 1094, 1100 (5th Cir. 1991) and Anderson v. McNeilab, Inc., 831 F.2d 92, 93 (5th Cir. 1987)).

### B. Medical Causation Evidence for LPLA Claims

Abbott moves for summary judgment on the ground, *inter alia*, that Plaintiffs' lack of medical causation evidence precludes their recovery on any of their claims under the LPLA. See Record Document 62 at 10. Plaintiffs counter that expert medical testimony is not necessary to establish causation in this case because the issues are sufficiently within "common knowledge" for a jury to perceive. See Record Document 61-2 at 12, 23. Plaintiffs further contend that they are not required to put forth expert evidence as to a medical causation because the testimony of Abbott's medical expert, Dr. Reeves, establishes it for them. See Record Document 62 at 9. The Court disagrees. This Court's precedent (and that of the Fifth Circuit and Louisiana state courts addressing the issue) have consistently held that in tort actions involving complex medical devices and concepts, medical causation cannot be established without the aid of expert medical testimony because these matters are not within the common knowledge of a layperson. See, e.g., Rhodes v. Bayer Healthcare Pharmaceuticals, Inc., No. 10-1695, 2013 WL 1282450, at *7–8 (W.D. La. Mar. 28, 2013) ("[A] finding of medical causation is not

something a layman can readily grasp or divine without some expert guidance.") (citing Hebert, 1994 WL 10184, at *2)).

In this case, it is undisputed that Plaintiffs' only expert is Dr. Dana J. Medlin ("Dr. Medlin"), a biomechanical engineer who Plaintiffs admit is not qualified to (and does not intend to) render any opinion regarding injury or medical causation. See Record Document 55-1 at 19. Just as in prior cases, "the lack of an expert to establish causation is fatal to Plaintiffs' claims." Rhodes, 2013 WL 1282450, at *2 (citing Johnson v. E.I. DuPont deNemours & Co., Inc., 08-628, p. 7 (La. App. 5th Cir. 1/13/09), 7 So. 3d 734, 740). The medical causation issues in this case are "matters beyond the common knowledge of a lay person": they involve scientific concepts such as endothelialization and vascular processes, the use of an FDA-regulated medical device during a complex heart procedure, and the risks and potential of harm associated with such use, all of which "can hardly be characterized as uncomplicated." See Hebert, 1994 WL 10184, at *2; see also Record Document 62 at 9; Record Document 56-2 at 13–14. Contrary to Plaintiffs' position, these are not "common sense" issues that a layman "can readily grasp or divine without some expert guidance." See Hebert, 1994 WL 10184, at *2; Record Document 61-2 at 12, 23. Thus, Plaintiffs have no expert evidence to establish the existence of their alleged injuries or medical causation of such injuries.

In order to state a cause of action under the LPLA, a plaintiff must establish four elements: that (1) the defendant is a manufacturer of the product; (2) the plaintiff suffered damages that were proximately caused by a characteristic of the product; (3) such characteristic rendered the product "unreasonably dangerous"; and (4) the plaintiff's damages arose from a reasonably anticipated use of the product by the plaintiff or

someone else. See La. R.S. 9:2800.54(A); see also Stewart v. Capital Safety U.S.A., 867 F.3d 517, 520 (5th Cir. 2017). Furthermore, as part of its burden in proving the third element, a plaintiff must show that the product is "unreasonably dangerous" in one of four ways (i.e., through one of four "theories of liability"): the product is (1) unreasonably dangerous in construction or composition; (2) unreasonably dangerous in design; (3) unreasonably dangerous due to an inadequate warning; or (4) unreasonably dangerous for failing to conform to an express warranty. See La. R.S. 9:2800.54(B); Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 260–61 (5th Cir. 2002).

Here, Plaintiffs have brought claims as to the first three theories under the LPLA; however, regardless of whether Plaintiffs' evidence is sufficient to raise a genuine dispute as to at least one of the theories, the Court finds that because Plaintiffs lack the required expert evidence to establish medical causation (an element of their claims) of any damages allegedly suffered from Abbott's product, Plaintiffs have not shown the existence of an element essential to all of its claims and thus their claims must fail as a matter of law.[4] Stewart, 867 F.3d at 522. Notwithstanding that Plaintiffs' lack of evidence as to causation alone warrants dismissal of all of their claims under the LPLA, the Court will further address their inadequate warning claim under the LPLA.

### C. Inadequate Warning Claim Under the LPLA

Plaintiffs also allege an inadequate warning claim against Abbott. Under this theory, a plaintiff must show that the product in question has a potentially damage-

---

[4] Because Plaintiffs have not offered sufficient proof of medical causation, an element essential to all of their claims, the "absence of any such proof essentially renders any and all factual disputes immaterial." See Rhodes v. Bayer Healthcare Pharmaceuticals, Inc., No. 10-1695, 2013 WL 1282450, at *2 n.5 (W.D. La. Mar. 28, 2013).

causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning regarding such characteristic. See Grenier v. Medical Engineering Corp., 243 F.3d 200, 205 (5th Cir. 2001). Louisiana courts apply the "learned intermediary doctrine" to failure to warn claims in products liability cases involving medical products or devices. See Bencomo v. Guidant Corp., No. 06-2473, 2008 WL 3364960, at *2 (E.D. La. Aug. 8, 2008) (citing Willet v. Baxter Int'l, Inc., 929 F.2d 1094, 1098 (5th Cir. 1991)). Under this doctrine, "the manufacturer has no duty to warn the patient, but need only warn the patient's physician." Willet, 929 F.2d at 1098. Here, Dr. Reeves stated in his deposition that he believed Abbott's product warnings were sufficient in alerting him that the Whisper Wire could fracture during use, and Plaintiffs have not offered any expert medical testimony to rebut this statement. See Record Document 56-1 at 15 (citing Deposition of Dr. Eric Reeves, Exhibit K).

An additional requirement crucial to this theory of liability, as with the first two theories referenced above, is a showing that the manufacturer's failure to provide an adequate warning about the characteristic (i.e., the product's unreasonably dangerous condition) was the proximate cause of the plaintiff's injuries. Thus, although the facts used in proving causation differ somewhat from the first two theories in that "the exact question under [this theory] is not whether [the manufacturer] failed to warn . . . that its [product was] defective," see Grenier, 243 F.3d at 205, but instead whether the plaintiff's evidence is sufficient to establish both the existence of a potentially damage-causing characteristic of the product and that the manufacturer failed to use reasonable care in providing an adequate warning. See id. Here, as with their other claims, because Plaintiffs have not offered any medical expert testimony to rebut Abbott's evidence as to either the potential

damage that could result from the wire fracture or the extent to which medical professionals are already aware of such risks, Plaintiffs have failed to offer sufficient evidence to support their inadequate warning claim.[5]

### D. Claim for Breach of the Implied Warranty of Fitness

Plaintiffs also maintain a claim for breach of the implied warranty of fitness. However, it is unclear to the Court as to whether Plaintiffs are alleging a claim for breach of the implied warranty of fitness or a claim for redhibition as they cite in their brief to Louisiana Civil Code articles that relate to both causes of actions. See Record Document 61-2 at 23–24.[6] Plaintiffs cannot recover under either theory because of the LPLA's exclusivity provision that prevents a plaintiff from recovering for personal injury damages based on any theory of liability that is not provided for in the statute. See La. R.S. 9:2800.52. While courts have held that plaintiffs are generally not barred from bringing a redhibition claim for purely economic loss, see Pipitone v. Biomatrix, Inc., 288 F.3d 239, 251 (5th Cir. 2002); La. R.S. 9:2800.53(5), Plaintiffs only seek recovery for their alleged personal injuries and thus can only pursue these claims under the LPLA.

### E. Applicability of *Res Ipsa Loquitur*

Finally, Plaintiffs contend that notwithstanding their burden to prove the elements of their claims under the LPLA, they are entitled to a *res ipsa loquitur* presumption that

---

[5] Even if Plaintiffs had offered sufficient proof of medical causation, their claims would still fail under this theory because of their failure to provide medical expert testimony to rebut Abbott's showing that its product warnings were sufficient, and that Dr. Reeves was aware of the risk that the wire might fracture at the time of Patton's surgery. See Record Document 62 at 14; Record Document 56-1 at 15.

[6] For example, Plaintiffs cite to Louisiana Civil Code article 2524, which governs the implied warranty of fitness, as well as article 2545, which governs the liability of bad faith sellers for redhibitory defects. See Record Document 61-2 at 24.

would permit the inference of negligence on the part of Abbott in causing Plaintiffs' alleged injuries. See Record Document 61-2 at 24; see also Lyles v. Medtronic Sofamor Danek, U.S.A., Inc., 871 F.3d 305, 312 (5th Cir. 2017). Although the Louisiana Supreme Court has held that *res ipsa loquitur* has limited applicability in products liability actions, it has also cautioned that because the doctrine is "a qualification of the general rule that negligence is not to be presumed," it "must be sparingly applied." See Lyles, 871 F.3d at 312 (citing Spott v. Otis Elevator Co., 601 So. 2d 1355, 1362 (La. 1992)); see also Lawson v. Mitsubishi Motor Sales of Am., Inc., 05-0257, p. 20 (La. 2006), 938 So. 2d 35, 49. In order to invoke the doctrine of *res ipsa loquitur*, a plaintiff must satisfy three requirements: (1) the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence; (2) the plaintiff must establish that the defendant's negligence falls within his scope of duty to plaintiff; and (3) the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides the defendant in causing the accident. Lawson, 938 So. 2d at 50 (emphasis and citation omitted).

In this case, Abbott has offered evidence showing that there are other plausible explanations for the wire failure, including the patient's own anatomy and surgical methods used by Dr. Reeves, either of which may have complicated the procedure or led to the wire being stressed beyond its intended capabilities. See Record Document 56-1 at 10, ¶ 30. In contrast, Plaintiffs have offered no evidence in support of their argument that *res ipsa loquitur* should be applied other than their own contention that the wire failed in its "normal and intended use." Record Document 61-2 at 25. Plaintiffs have not met their burden of "adduc[ing] evidence to exclude other reasonable explanations" for the

product failure. See Lyles, 871 F.3d at 315. *Res ipsa loquitur* is not applicable to this LPLA action.

## III. CONCLUSION

Based on the foregoing reasons, Abbott's Motion for Summary Judgment (Record Document 56) is **GRANTED** and Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 2nd day of October, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT